IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BASKIN-ROBINS FRANCHISING, LLC, A DELAWARE LIMITED LIABILITY COMPANY; DUNKIN-DONUTS FRANCHISING LLC, A DELAWARE LIMITED LIABILITY COMPANY; DD IP HOLDER, LLC, A DELAWARE LIMITED LIABILITY COMPANY; AND BR IP HOLDER, LLC, A DELAWARE LIMITED LIABILITY COMPANY; | § § § § § § § § § | 5:24-CV-00810-FB-RBF |
| *Plaintiffs,* | § § § | |
| vs. | | |
| ALAMO DONUTS LLC, A TEXAS LIMITED LIABILITY COMPANY; JEFFREY PHILLIPS, AN INDIVIDUAL; AND 401 SAN PEDRO LLC, A TEXAS LIMITED LIABILITY COMPANY; | | |
| *Defendants.* | | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Default Judgment filed by Plaintiffs. *See* Dkt. No. 31. This motion has been referred for a report and recommendation, pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1 to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 23. The Court has subject matter jurisdiction over the claims premised on federal trademark law invoked within the four corners of Plaintiff's well-pleaded complaint and supplemental or diversity jurisdiction over Plaintiffs' various state law claims. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a

federal question is presented on the face of the plaintiff's properly pleaded complaint.") (citation omitted); 28 U.S. Code §§ 1331 (setting out the requirements for federal question jurisdiction), 1332 (same for diversity jurisdiction), 1338 (providing for original jurisdiction over patents, copyrights, and trademarks), and 1367 (setting out the requirements for supplemental jurisdiction over state law claims); Dkt. No. 1 at 2-5 (alleging the citizenship of the parties, which are completely diverse for purposes of diversity jurisdiction); *id*. at 19-20, 95 (alleging well over $75,000.00 in damages, satisfying the amount-in-controversy requirement). Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, the Court recommends that Plaintiffs' Motion for Default Judgment, Dkt. No. 31, be **GRANTED IN PART and DENIED IN PART** for the reasons set forth herein.

**Factual and Procedural Background**

According to the Complaint, taken as true in light of Defendants' default under Federal Rue of Civil Procedure 55, Plaintiffs Baskin-Robins Franchising, LLC ("B-R Franchising"), and Dunkin-Donuts Franchising, LLC ("Dunkin' Franchising"), entered into an agreement, referred to herein as the "San Pedro Franchise Agreement," with Defendant Alamo Donuts, LLC, for the development and operation of a Baskin-Robins/Dunkin' Donuts restaurant at 403 San Pedro Ave, San Antonio, Texas, 78212. Dkt. No. 1 at 7. The San Pedro Franchise Agreement, dated January 6, 2016, imposed obligations on Alamo Donuts, LLC, "including but not limited to full and timely payment of royalties and other fees, as well as performance of non-financial duties." *Id*. Defendant Jeffrey Phillips executed the San Pedro Franchise Agreement for Alamo Donuts, LLC, as its manager. *Id*. Phillips contemporaneously executed a personal guarantee in his individual capacity whereby he guaranteed payment of Alamo Donuts, LLC's money obligations

and performance of all of Alamo Donuts, LLC's other obligations under the San Pedro Franchise Agreement. *Id*. The San Pedro Franchise Agreement and Phillips' personal guarantee are attached as Exhibits 2 and 3 to Plaintiffs' Complaint. *Id*. at 24-52 (page range also includes an addendum to the San Pedro Franchise Agreement signed and executed by Phillips).

Baskin-Robins Franchising, LLC, and Dunkin-Donuts Franchising, LLC, also entered into a similar but separate franchising agreement, the "Military Highway Franchise Agreement," with Alamo Donuts, LLC, for the development and operation of a Baskin-Robins/Dunkin' Donuts restaurant at 14501 NW Military Highway, Suite 109, San Antonio, Texas, 78231. *Id*. at 7-8. The Military Highway Franchising Agreement, dated March 29, 2017, imposed similar obligations on Alamo Donuts, LLC, with respect to the Military Highway restaurant. *Id*. Phillips also contemporaneously executed a personal guarantee in his individual capacity whereby he guaranteed payment of Alamo Donuts, LLC's money obligations and performance of all of Alamo Donuts, LLC's other obligations under the Military Highway Franchise Agreement. *Id*. at 8. The Military Highway Franchise Agreement and Phillips' personal guarantee are attached as Exhibits 4 and 5 of Plaintiffs' Complaint. *Id*. at 53-77 (page range includes an addendum to the Military Highway Franchise Agreement signed and executed by Phillips).

Plaintiffs aver that they or their predecessors have used the Baskin-Robins and Dunkin' Donuts Marks in interstate commerce since the 1950s and "have developed substantial goodwill associated therewith," and that the marks "have become famous assets of substantial value" by way of Plaintiffs' "lengthy and substantial promotion and marketing of restaurant services and food and beverage products under the B-R and Dunkin' marks." *Id*. at 8. Plaintiffs aver that these marks are registered with the Principal Register of the United States Patent and Trademark Office and that the registrations "continue in full force and effect." *Id*. at 9. "These trademarks

and service marks, which have not been canceled are now valid and have been valid at all times relevant to this Complaint and remain in full force and effect." *Id*. The registrations issued by the United States Patent and Trademark Office are set forth in Exhibit 6 to the Complaint. *Id*. at 78-86. Plaintiffs, as part of their business model, grant franchisees the right to own and operate Baskin-Robins and Dunkin' Donuts restaurants "together with a limited license to use the BR and Dunkin' Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by B-R Franchising and Dunkin' Franchising in the respective franchising agreements." *Id*. at 9.

"Under the express terms and provisions of the San Pedro and Military Highway Franchise Agreements, [Alamo Donuts LLC] agreed to fully and timely pay to B-R Franchising and Dunkin' Franchising royalty fees, continuing franchising fees and continuing advertising fees that are calculated at prescribed percentages of its franchised restaurants' monthly gross sales as defined in the Franchise Agreements and further agreed to pay interest on any late payments." *Id*. at 10.

Plaintiffs allege that Alamo Donuts, LLC, and Phillips breached the San Pedro and Military Highway Franchise Agreements (together, the "Franchise Agreements") when they failed to pay required continuing franchising and advertising fees. *Id*. On July 10, 2023, Baskin-Robbins and Dunkin' Franchising "issued and delivered to [Alamo Donuts, LLC] and Phillips a written Notice of Default and Impending Termination [] for the San Pedro and Military Highway Restaurants . . . based on their failure to pay continuing franchising fees and continuing advertising fees required under the Franchise Agreements for those restaurants." *Id*. at 10-11. About a month later, on August 9, 2023, Plaintiffs then issued and delivered to Alamo Donuts, LLC, and Phillips written notices of termination of the Franchise Agreements based on their

failure to cure the monetary defaults for both the San Pedro and Military Highway Restaurants. *Id*. at 11.

Plaintiffs aver that under the terms of the Franchising Agreements and personal guarantees, Alamo Donuts, LLC, and Phillips were required to, "upon receipt of the Termination Notices . . . among other things, immediately cease operating the [San Pedro and Military Highway] Restaurants and immediately cease using any and all of the BR and Dunkin' Marks at the [San Pedro and Military Highway] Restaurants, and within thirty days after receipt of the Termination Notice complete the process of de-identifying the [San Pedro and Military Highway] Restaurants." *Id*. "The Notice of Termination issued on August 9, 2023, demanded that [Alamo Donuts, LLC] and Phillips comply with their Post-Termination Obligations, including by immediately ceasing to operate the Restaurants, by immediately ceasing to use any and all of the BR and Dunkin' Marks at the Restaurants, and thereafter by completing by the-identification of the Restaurants required by the Franchise Agreement." *Id*.

Plaintiffs allege further breaches of the San Pedro Franchise Agreement and Phillips' personal guarantee thereof "by failing and refusing to comply with the Termination Notice's demand to immediately cease operating the San Pedro Restaurants [sic]," and that "[Alamo Donuts, LLC] and Phillips remain in breach of the San Pedro Franchise Agreement and San Pedro Guarantee by failing and refusing to cease using the BR and Dunkin' Marks and comply with their other Post-Termination Obligations." *Id*. at 11-12. "The breaches by [Alamo Donut, LLC] and Phillips in this regard have resulted and are resulting in irreparable injury to Plaintiffs' for which no adequate remedy at law is available." *Id*. at 12.

With respect to the Military Highway restaurant, the Complaint further alleges that "[Alamo Donuts LLC] and Phillips have breached the Military Highway Franchise Agreement

and Military Highway Guarantee by failing and refusing to pay the amounts due and owing under the Franchise Agreement." *Id*.

Baskin-Robbins Franchising and Dunkin' Franchising issued a written Cease and Desist Notice on or about March 18, 2024, demanding Alamo Donuts LLC and Phillips "immediately comply with all of their post-termination obligations under the Franchise Agreements including but not limited to payment of all monies owed and de-identification of the Restaurants," and that Alamo Donuts, LLC, and Phillips did not comply. *Id*. Plaintiffs issued another Cease and Desist Notice on May 28, 2024, demanding that Alamo Donuts, LLC, and Phillips "comply with all of their post-termination obligations under the Franchise Agreements including but not limited to de-identification of the San Pedro Restaurant," and allege that Alamo Donuts, LLC, and Phillips did not comply. *Id*.

Plaintiffs also attempted to partially resolve the issue through the landlord of the property at the San Pedro restaurant. *Id*. That landlord, 401 San Pedro LLC, of which Phillips is a "member/manager" according to Plaintiffs' Complaint, *id*., is also named as a defendant. Plaintiffs issued a written Cease and Desist Notice to 401 San Pedro LLC "that demanded Landlord immediately take action to eliminate the display, use and continuing infringement of the BR and Dunkin' Marks at the San Pedro Restaurant." *Id*. at 13. Plaintiffs allege that 401 San Pedro LLC "has failed and refused to comply" with the demand. *Id*.

Plaintiffs then filed the present action on July 18, 2024, asserting various state and federal claims against the following: Alamo Donuts, LLC, the franchisee; Jeffrey Phillips, the franchisee's manager and personal guarantor; and 401 San Pedro LLC, the landlord of the San Pedro property and of which Phillips is a member/manager. *See generally id*. The Complaint asserts the following claims: (1) two counts of breach of contract against Alamo Donuts, LLC

(one for each Franchise Agreement); (2) two counts of breach of contract against Phillips (one for each personal guarantee of each Franchise Agreement); (3) trademark and trade-dress infringement with respect to the San Pedro Restaurant against all Defendants under 15 U.S.C. § 1114(1), which includes a request for preliminary and permanent injunctions; (4) unfair competition with respect to the San Pedro restaurant against all Defendants under 15 U.S.C. § 1125(a), which includes requests for preliminary and permanent injunctions; (5) breach of the post-termination requirements with respect to the San Pedro Restaurant against Alamo Donuts, LLC, and Phillips; and (6) breach of the post-termination restrictions with respect to the San Pedro Restaurant against Alamo Donuts, LLC, and Phillips. *Id*. at 13-19.

The Complaint asks the Court to award B-R Franchising and Dunkin' Franchising judgment jointly and severally against Alamo Donuts, LLC, and Phillips, for all amounts due and owing under and related to the Franchise Agreements; to award B-R Franchising and Dunkin' Franchising judgment jointly and severally against Alamo Donuts, LLC, and Phillips in an amount equal to collection costs, including reasonable attorneys' fees, incurred in asserting all rights and collecting all amounts due under the various agreements; to award B-R Franchising and Dunkin' Franchising judgment jointly and severally against Alamo Donuts, LLC, and Phillips in an amount equal to all pre and post-judgment interest that has accrued and will continue to accrue until paid in full; and to award Plaintiffs preliminary and permanent injunctions against all Defendants to prohibit their unauthorized use of the B-R and Dunkin' Marks, their continued breach and violation of the post-termination obligations, and their continued breach and violation of the post-termination restrictions. *Id*. at 19-20.

After filing suit, Plaintiffs encountered difficulties locating and serving Defendants and, on October 14, 2024, filed a Motion for Additional Time to Serve Summons along with a Brief

in Support, requesting an additional 60 days to serve Defendants. Dkt. No. 15. The Court granted that motion and set the deadline for service as February 5, 2025. Dkt. No. 16. After having "exhausted diligent efforts to locate and serve Defendants in person and by certified mail," Plaintiffs filed a Motion for Leave to Serve Summons and Complaint on Defendants by Publication and Brief in Support. Dkt. No. 17 at 2; *see also* Fed. R. Civ. P. 4(e)(1) (noting, "an individual . . . may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."); Tex. R. Civ. P. 109 (providing for service-by-publication in Texas). The Court granted the Motion, Dkt. No. 18, and Plaintiffs filed on June 23, 2025, sworn proof of service-by-publication as to all Defendants. *See* Dkt. Nos. 26, 27, 28. Although untimely, the Court accepts this as sufficient proof of service for present purposes.

Defendants didn't timely respond, and Plaintiffs moved for a Clerk's Entry of Default against all Defendants on September 5, 2025, Dkt. No. 29, with the Clerk's Entry of Default being entered that same day. Dkt. No. 30. Plaintiffs now move for Default Judgment against all Defendants. Dkt. No. 31.

## Analysis

### A. Plaintiffs Secured a Default.

Pursuant to this Court's order permitting them to do so, Plaintiffs effected service by publication, as demonstrated by the sworn affidavits of the newspaper publisher and documentation from the Texas Office of Court Administration. *See* Dkt. Nos. 26, 27, 28; Fed. R. Civ. P. 4(e)(1); Tex. R. Civ. P. 109. The record reflects that, to date, Defendants have failed to answer or otherwise defend against Plaintiffs' claims. The rules provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend,

and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Accordingly, the Clerk's entry of default was proper. *See* Dkt. No. 30.

**B. A Default Judgment is Partially Warranted.**

Once a default has been entered, and upon a party's motion, a court may enter a default judgment. Fed. R. Civ. P. 55(b); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). "[A] party," however, "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quotation marks and citation omitted). Rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) (footnote omitted). When considering whether such a basis is presented, a court accepts as true the complaint's well-pleaded factual allegations—except regarding damages—and must determine whether those pleaded facts state a claim upon which relief may be granted. *See id.*; *see also United States ex rel. M-Co. Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Plaintiffs also provide in their Motion for Default Judgment that "[t]he Defendants are not minors or incompetent persons, nor are they in military service as set forth in the Servicemembers Civil Relief Act, 50 U.S.C. §3931, Protection of Servicemembers Against Default Judgments." Dkt. No. 31 at 2; *see also* Dkt. Nos. 29-2 & 29-3 (exhibits certifying status of Defendants).

Plaintiffs are—with a few exceptions—entitled to a default judgment because the facts alleged in the Complaint state claims for which relief may be granted. Plaintiff's causes of action[1] are treated in turn.

[1] No party appears to have invoked choice-of-law issues as to claims not governed by federal law. However, the Franchise Agreements contain choice-of-law clauses providing that "This Agreement . . . shall be interpreted, construed, and governed by the laws of the Commonwealth

**1.** *Alamo Donuts LLC and Phillips breached the San Pedro and Military Highway Agreements.* In Massachusetts, the "elements of a breach of contract claim are that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Huang* v. *RE/MAX Leading Edge*, 101 Mass. App. Ct. 150, 153-54 (2022), *S.C. sub nom. Huang* v. *Ma*, 491 Mass. 235 (2023). Whereas in "Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted) (alteration in original).

Plaintiffs' Complaint alleges facts, now taken as true in a default judgment posture, establishing as to both Alamo Donuts, LLC, and Phillips that there were agreements between the parties in the form of the Franchise Agreements and personal guarantees thereof; the Franchise Agreements and personal guarantees thereof were supported by consideration; B-R Franchising and Dunkin' Franchising were ready, willing, and able to perform their part of the contracts; that Alamo Donuts, LLC, and Phillips committed a breach of the Franchise Agreements and personal guarantees thereof; and B-R Franchising and Dunkin' Franchising suffered harm as a result. *See generally* Dkt. No. 1. Plaintiffs' Complaint also alleges facts, now taken as true in a default judgment posture, establishing as to both Alamo Donuts LLC and Phillips that (1) there were

of Massachusetts." *See, e.g.*, Dkt. No. 1 at 70. But it is also true that "[w]hen no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Erring on the side of completeness, the Court applies the law of both states, as Plaintiffs have satisfied both states' breach of contract requirements.

valid contracts in the Franchise Agreements and personal guarantees thereof; (2) B-R Franchising and Dunkin' Franchising tendered performance; (3) the contracts were breached by Alamo Donuts, LLC, and Phillips; and (4) damages were sustained by B-R Franchising and Dunkin' Franchising as a result of the breaches. *Id*. For the San Pedro Agreement, Alamo Donuts, LLC, breached as described in the complaint by failing to comply with a host of contractual obligations, and Phillips breached by failing to live up to his promise in the personal guarantee. *Id*. The same is true for the Military Highway Agreement. *Id*. Thus, B-R Franchising and Dunkin' Franchising are entitled to a default judgment against Alamo Donuts, LLC, for breach of the Franchise Agreements and against Phillips for breach of the two personal guarantees by which he guaranteed the terms of the Franchise Agreements (causes of action 1-4 in the Complaint) because the facts alleged in the Complaint state claims for breach of contract upon which relief may be granted.

**2.** *Findings of trademark and trade dress infringement against Defendants Alamo Donuts LLC and Phillips are warranted, but findings of trademark and trade dress infringement against 401 San Pedro LLC are not.* Plaintiffs allege that all Defendants made infringing use of B-R and Dunkin' distinctive marks and trade dress with respect to the San Pedro restaurant in such a way that was likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1). *Id.* at 16-17.

Section 1114(1)(a) of Title 15 of the United States Code makes it unlawful to, without the consent of the registrant, "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." "To recover on a claim of trademark

infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (footnote omitted). "Registration of a mark with the U.S. Patent and Trademark Office provides that the mark is legally protectable from infringement." *Bos. Pizza Restaurants, L.P. v. Bay Three Ltd., Inc.*, No. 3:12-CV-00426-O, 2013 WL 12123896, at *3 (N.D. Tex. July 16, 2013) (citing 5 U.S.C. § 1115). Courts considering the likelihood of confusion consider "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008) (quotations and citation omitted). Courts also consider (8) the degree of care exercised by potential purchasers; no single factor is dispositive and a majority of factors do not need to be met. *Id*.

Trade dress infringement likewise requires a showing that "(1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) and that the dress has been infringed, the latter of which examines likelihood of confusion." *See, e.g.*, *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991). "The Fifth Circuit recognizes a conclusive presumption that a trade dress qualifies for protection if the trade dress, or elements thereof, is registered according to federal regulations." *In re Stoli Grp. (USA) LLC*, No. 24-80146-SWE-11, 2026 WL 575084, at *6 (Bankr. N.D. Tex. Feb. 27, 2026) (citing *Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*, 40 F.4th 308, 317 (5th Cir. 2022) and *Perry v. H. J. Heinz Co. Brands, L.L.C.,* 994 F.3d 466, 471 (5th Cir. 2021)). The "likelihood of confusion" test for trade dress infringement is the same as under trademark

infringement. *See, e.g.*, *Organicare Nature's Sci., LLC v. Cheng*, No. 1:25-CV-343-RP, 2025 WL 2629970, at *4 (W.D. Tex. Aug. 22, 2025), *report and recommendation adopted*, No. 1:25-CV-343-RP, 2025 WL 2628120 (W.D. Tex. Sept. 11, 2025).

Plaintiffs allege facts establishing that they have legally protectable marks and trade dress in the distinctive, federally-registered B-R and Dunkin' marks and that Defendants Alamo Donuts and Phillips, without Plaintiffs' consent, used in commerce the registered marks in connection with the sale, distribution, or advertising of goods, and in such a way that there was a reasonable likelihood of confusion, with respect to the San Pedro restaurant. Dkt. No. 1 at 8-10 (alleging and documenting Plaintiffs' registration and use of the marks and use of the trade dress at issue), 10-12 (alleging Alamo Donuts, LLC, and Phillips' use and infringement of the exact marks and dress at issue), 16-17 (alleging the unlawful use of Plaintiffs' exact marks by Alamo Donuts, LLC, and Phillips, in such a way likely to cause confusion, and incorporating factual allegations in support). Thus, Plaintiffs are entitled to a default judgment on a trademark and trade dress infringement claim against Alamo Donuts, LLC, and Phillips because the facts alleged in the Complaint state claims upon which relief may be granted.

However, the Court fails to see how the facts currently alleged establish trademark or trade-dress infringement by the landlord, 401 San Pedro LLC, even though Plaintiffs allege that Jeffrey Phillips was a "member/manager" of 401 San Pedro LLC. *See* Dkt. No. 1 at 12. It does not necessarily follow that when 401 San Pedro LLC leased a property to a lessee that infringed, 401 San Pedro LLC also engaged in infringement. Section 1114(1)(a) makes unlawful the use of registered marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or service on or in connection with which such use is likely to [confuse consumers]." The Court cannot conclude, based on the facts alleged and bare-bones briefing provided, that 401 San

Pedro LLC used the registered marks in connection with the sale, distribution, or advertising of any goods or services. And to the extent that *Jeffrey Phillips* did so, he appears to have done so in his capacity as the franchisee of the San Pedro restaurant, not as a landlord. Plaintiffs have therefore failed to demonstrate entitlement to default judgment against 401 San Pedro LLC for infringement under § 1114. To the extent that there is any legal basis for holding a landlord accountable for trademark or trade dress infringement in these circumstances, it is not clearly spelled out in the filings before the Court.

**3.** *A finding of unfair competition as to all Defendants except the landlord 401 San Pedro LLC is warranted.* Title 15 U.S.C. § 1125(a) provides a civil cause of action against:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1).

"As a general rule, the same facts that support a trademark infringement claim also support a claim for unfair competition." *Software Publishers Ass'n v. Scott & Scott, LLP*, No. 3:06-CV-0949-G, 2007 WL 92391, at *8 (N.D. Tex. Jan. 11, 2007) (citing *Marathon Manufacturing Company v. Enerlite Products Corporation,* 767 F.2d 214, 217 (5th Cir. 1985)). Thus, Plaintiffs allege that all Defendants engaged in unfair competition and false or misleading descriptions or representations of fact likely to cause confusion or cause mistake, to deceive as to the affiliation, connection, or association of the parties or to misrepresent the nature,

characteristics, qualities, or geographic origin of the Defendants' goods, services, and commercial activities, all in violation of 15 U.S.C. § 1125(a)(1), with respect to the San Pedro restaurant. Dkt. No. 1 at 17-18 (alleging a violation of the statute and incorporating factual allegations in support); *see also id*. at 7-13. Thus, Plaintiffs are entitled to a default judgment against all Defendants except landlord 401 San Pedro LLC for unfair competition with respect to the San Pedro restaurant because the facts alleged in the Complaint state a claim upon which relief may be granted.

As to 401 San Pedro LLC, Plaintiffs have not explained to the Court's satisfaction how they state a claim for relief based solely on the landlord's status as the lessor of a property at which a tenant allegedly engaged in unfair competition, even if Jeffrey Phillips is the proprietor of the landlord LLC in question. The Court cannot conclude, based on the facts alleged, that 401 San Pedro LLC used the registered marks in connection with the sale of any goods or services. And to the extent that *Jeffrey Phillips* did so, the Court cannot conclude on this record that he did so as the landlord rather than in his capacity as the franchisee of the San Pedro restaurant. Plaintiffs have therefore failed to demonstrate entitlement to default judgment on this claim against 401 San Pedro LLC. To the extent that there is any legal basis for holding a landlord accountable for unfair competition in these circumstances, it is not clearly spelled out in the filings before the Court.

**4.** *A finding of breach of post-termination restrictions and requirements is warranted against Alamo Donuts LLC and Phillips.* Plaintiffs allege that Defendants failed to comply with their post-termination requirements and restrictions in breach of the Franchise Agreement, with respect to the San Pedro restaurant. Dkt. No. 1 at 18-19. For the reasons provided above, Plaintiffs allege facts establishing breach of contract of the San Pedro Franchise

Agreement and the personal guarantee thereof, under both Texas and Massachusetts law. *Supra* at 10-11. Thus, Plaintiffs are entitled to a default judgment for breach of the termination requirements and restrictions for the San Pedro restaurant because the facts alleged in the Complaint state a claim upon which relief may be granted. However, Plaintiffs have yet to show themselves entitled to the injunctive relief that is sought for these specific breaches of contract, given the Courts' reasoning provided below.

**C. No Hearing Is Needed on Damages.**

Damages ordinarily may not be awarded via default judgment "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (footnote omitted). But if the amount of damages can be "computed with certainty by reference to the pleadings and supporting documents" and a hearing would reveal no pertinent information, "the court need not jump through the hoop of an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 311 (5th Cir. 1993) (noting that a district court has "wide latitude" in deciding whether to require an evidentiary hearing when granting default judgment) (quotations and citations omitted). Such is the case here where the pleadings, present Motion for Default Judgment, and supporting exhibits provide sufficient information to ascertain damages. *See* Dkt. No. 1 at 138-43 (itemizing and establishing Alamo Donuts, LLC's and Phillips' outstanding balance of $253,935.62, with $117,487.26 being the amount due under the Military Highway agreement and $136,448.36 being the amount due under the San Pedro agreement); Dkt. No. 31-2 at 2-3 (in which the total requested judgment amounts correspond to the outstanding balance, not including the additional $23,343.35 requested for "collection costs, including reasonable attorneys' fees, incurred in asserting all rights and collecting all amounts due under the License Agreements and Guarantee Agreements[.]").

**D. All Amounts Due and Owing Under and Related to the San Pedro and Military Highway Franchise Agreements Should be Awarded.**

Plaintiffs provide invoices showing the balance due from Alamo Donuts, LLC, and Phillips as a result of their breaches of the Franchise Agreements, attached in exhibits to their Complaint. *See, e.g.*, Dkt. No. 1 at 138-43 (showing a total amount due of $253,935.62). Plaintiffs allege actions by Alamo Donuts, LLC, and Phillips that would make the amounts due under the Franchise Agreements. In their Complaint, Plaintiffs request an award of "all amounts due and owing under and related to" the Franchise Agreements. *Id*. at 19. Plaintiffs, in their Proposed Judgment attached to their Motion for Default Judgment, request an award in the amount of the Verified Complaint's sum certain: $253,935.62. Dkt. No. 31-2 at 3. Thus, Plaintiffs B-R Franchising and Dunkin' Franchising have established that they are entitled to $253,935.62 in unpaid fees and penalties for the use of their marks jointly and severally against Alamo Donuts, LLC, and Phillips.

**E. Injunctive Relief is Also Appropriate.**

Plaintiffs also request injunctive relief, asking in their Complaint that the Court "[a]ward Plaintiffs judgment in the form of preliminary and permanent injunctions against all Defendants to prohibit their unauthorized use of the B-R and Dunkin' Marks," "[a]ward Plaintiffs judgment in the form of preliminary and permanent injunctions against all Defendants to prohibit their continued breach and violation of the Post-Termination Obligations," and "[a]ward Plaintiffs judgment in the form of preliminary and permanent injunctions against all Defendants to prohibit their continued breach and violation of Post-Termination Restrictions." *Id*. Plaintiffs drop the requests for preliminary injunctions in the proposed judgment attached to their Motion for Default Judgment and instead ask for permanent injunctions. Dkt. No. 31-2. The Court agrees that injunctive relief prohibiting further infringement of trademarks and trade dress and unfair

competition is warranted as to Alamo Donuts, LLC, and Phillips, but not San Pedro 401 LLC, for the reasons discussed above. *See supra* at 11-15.

However, for reasons discussed next, Court will not grant the second and third requests for additional injunctive relief. To the extent Plaintiffs seek permanent injunctions prohibiting continued breach of the post-termination obligations and post-termination restrictions, the Motion and pleadings don't adequately explain why such potential harms—to the extent they are in addition to harms remedied by an injunction against further infringement and unfair competition—could not be remedied by money damages. There is also no guidance provided for why such permanent injunctive relief would not be overbroad. The Court declines to recommend such additional injunctive relief, as it appears duplicative or overbroad.

Regarding the unauthorized use of the B-R and Dunkin' Marks, the Lanham Act specifically contemplates injunctive relief as a remedy for prevailing plaintiffs. 15 U.S.C. § 1116. And the Fifth Circuit has blessed the granting of injunctive relief in the Lanham Act context, with the instruction that "[a]s with injunctive relief generally, an equitable remedy for trademark infringement should be no broader than necessary to prevent the deception." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (internal quotations and citation omitted); *see also Moore Bus. Forms, Inc. v. Seidenburg*, 619 F. Supp. 1173, 1184 (W.D. La. 1985) (granting injunctive relief in the 15 U.S.C. § 1114 context). Moreover, "The Lanham Act grants the court the power to impose an injunction, 'according to the principles of equity and upon such terms as the court may deem reasonable,' for unfair competition that violates 15 U.S.C. § 1125." *Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-385, 2017 WL 2903175, *14 (E.D. Tex. Jan. 20, 2017).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (citation omitted). A permanent injunction must also not be overbroad. *See, e.g.*, *Green Valley Special Util. Dist. v. City of Schertz, Texas*, 969 F.3d 460, 478 n.39 (5th Cir. 2020).

Here, Plaintiffs have alleged an irreparable injury, specifically through Alamo Donuts, LLC's and Phillips' unfair competition and unlawful, continued use of their registered marks without authorization or payment, which infringes on those marks and risks continued confusion of Alamo Donuts, LLC, and Phillips' affiliation with Plaintiffs. Dkt. No. 1 at 10-13, 18-19. The Court also finds, based on the Plaintiff's uncontroverted facts, that remedies at law, such as money damages, are inadequate to compensate for that injury, given that Alamo Donuts, LLC, and Phillips continue to unfairly compete and make unauthorized use of Plaintiffs' registered marks in a manner that could harm those marks and risk continued confusion of Alamo Donuts, LLC, and Phillips' affiliation with Plaintiffs. Moreover, payment of the past due amounts will not fully remedy this continued use. The Court furthermore finds that the balance of hardships between the parties—which involves the burden of de-identifying the restaurants and discontinuing the use of the registered marks and discontinuing unfair competition versus the continued infringement of and confusion regarding Plaintiffs' marks—weighs in favor of

Plaintiffs. And, lastly, the Court finds that there is no reason to believe the public interest would be disserved by a permanent injunction to this end, or that it would be overbroad.

Thus, Plaintiffs are entitled to permanent injunctive relief against Defendants Alamo Donuts, LLC, and Phillips, and their request for an injunction prohibiting the continued trademark and trade dress infringement of the B-R and Dunkin' marks, and that such an injunction is no broader than is necessary to prevent the deception. *See Abraham*, 708 F.3d at 620. The request should therefore be granted and an injunction narrowly tailored to prevent continued infringement should be entered.

To the extent injunctive relief is sought beyond an order to refrain from continued infringement and unfair competition by Alamo Donuts, LLC, and Phillips, more briefing is required. As explained, the Court cannot ascertain, based on the present briefing and record, how a broad injunction along the lines requested by Plaintiffs would not be either unnecessarily duplicative or overbroad.

**F. Plaintiffs Have Shown Themselves Entitled to Attorneys' Fees, But Should Move Separately For Their Award of Attorneys' Fees.**

Plaintiffs make an additional request for $23,343.35 in "collection costs," including and especially "reasonable attorneys' fees, incurred in asserting all rights and collecting all amounts due under the [various agreements]." Dkt. No. 31-2 at 3; *see also* Dkt. No. 1 at 19 (asking for collection costs). The Franchise Agreements provide that Alamo Donuts, LLC, and Phillips must "pay all collection charges, including reasonable attorneys' fees, incurred by us to collect fees that are due." Dkt. No. 1 at 31 (Section 5.7: Late Fees, Interest and Costs); *id*. at 58 (Section 5.7: Late Fees, Interest and Costs). Under general Texas contract law, a party may recover attorneys' fees when such recovery is provided for by statute or by contract. *In re Velazquez,* 660 F.3d 893, 895-96 (5th Cir. 2011).

Attorney's fees, whether recovered under a contract or statute, must be necessary and reasonable. *See, e.g.*, *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484, 487 (Tex. 2019). Here, however, there is an insufficient basis in the Motion for Default Judgment or pleadings to determine the reasonableness and necessity of the requested fees. *See* Dkt. Nos. 1, 31, 31-1, 31-2 (providing only a sum of attorneys' fees requested without an segregation, itemization, hours expended, hourly rates, or other necessary information); *see also* Dkt. Nos. 29, 29-1, 29-2, 29-3. Thus, while Plaintiffs have demonstrated entitlement to recover attorneys' fees, they must instead seek attorneys' fees by separate motion in compliance with Federal Rule of Civil Procedure 54(d)(2). The Motion should provide the Court with all information necessary to determine the reasonableness and necessity of the requested fees. *See* *Rohrmoos Venture*, 578 S.W.3d at 487.

**G. Costs Can Be Recovered Via a Bill of Costs.**

The Court construes Plaintiffs' requests for "collection costs" as also requesting an award of court costs. Such costs can be recovered by timely filing a bill of costs using the form required by the Clerk of the Court and supported by appropriate documentation. *See* Local Rule CV-54(a).

**H. Pre- and Post-Judgment Interest.**

Lastly, Plaintiffs also request in their Complaint judgment jointly and severally against Alamo Donuts, LLC, and Phillips in an amount equal to all pre and post-judgment interest that has accrued and will continue to accrue until paid in full. Dkt. No. 1 at 19. They do so too in their proposed judgment. Dkt. No. 31-2 at 3. Thus, Plaintiffs are entitled to such interest as well, for the reasons provided herein.

**Conclusion and Recommendation**

For the reasons discussed above it is recommended that Plaintiff's Motion for Default Judgment, Dkt. No. 31, be **GRANTED in part** and **DENIED in part** as discussed herein.

Specifically, Plaintiffs should **GRANTED** the following:

(1) B-R Franchising and Dunkin' Franchising should be awarded judgment jointly and severally against Alamo Donuts, LLC, and Phillips for all amounts due and owing under and related to the San Pedro Franchise Agreement and personal guarantee thereof,

(2) B-R Franchising and Dunkin' Franchising should be awarded judgment jointly and severally against Alamo Donuts, LLC, and Phillips for all amounts due and owing under and related to the Military Highway Franchise Agreement and personal guarantee thereof,

(3) B-R Franchising and Dunkin' Franchising should be awarded judgment jointly and severally against Alamo Donuts, LLC, and Phillips in an amount equal to such Plaintiffs' collection costs, including reasonable attorneys' fees, incurred in asserting all rights and collecting all amounts due under the License Agreements and Guarantee Agreements, subject to the conditions provided herein,

(4) B-R Franchising and Dunkin' Franchising should be awarded judgment jointly and severally against Alamo Donuts, LLC, and Phillips in an amount equal to all pre- and post-judgment interest that has accrued and will continue to accrue until paid in full, and

(5) Plaintiffs should be awarded judgment in the form of a permanent injunction against Defendants Alamo Donuts, LLC, and Jeffrey Phillips to prohibit their unauthorized

trademark and trade dress infringement of the B-R and Dunkin' Marks and continued unfair competition against them. *See* Fed. R. Civ. P. 65(d)(2)(B).

All other relief not provided for herein should be **DENIED**.

**IT IS FURTHERMORE ORDERED** that Plaintiffs shall, within 30 days after the District Judge's ruling on this Report and Recommendation, file a motion requesting entry of judgment and attaching a proposed judgment, including injunction language that conforms with the scope of injunctive relief awarded herein.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this deadline is modified by the Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the presiding District Judge's standing orders or other Court order. *See* W.D. Tex. Local Rule CV-7. The objecting party shall file the objections with the Clerk of the Court and serve the objections on all other parties.

A party is entitled to a *de novo* review by the District Judge of the findings and conclusions contained in this Report and Recommendation, only if specific objections are made. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the default time to file objections from 10 to 14 days). An objecting party must therefore specifically identify those

findings, conclusions, or recommendations to which objections are made, as well as the basis for all such objections; the District Judge need not consider frivolous, conclusory, or general objections. *Id*. Failure to timely file written, specific objections to any proposed findings, conclusions, or recommendations contained in this Report and Recommendation will bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the District Judge, except on grounds of plain error, given that the party is here provided notice that such consequences will result from a failure to object. *See* 28 U.S.C. § 636(b)(1)(C); *Douglass*, 79 F.3d at 1417. Finally, facts or legal arguments raised for the first time in objections to a Magistrate Judge's findings, conclusions, and recommendations are "not properly before the district court." *United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *see also Shambaugh & Son, L.P. v. Steadfast Ins. Co*., 91 F.4th 364, 369 (5th Cir. 2024) ("[The Fifth Circuit] considers arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district [judge] in objections to the magistrate judge's report and recommendation.").

**IT IS SO ORDERED**.

**SIGNED** this 26th day of August, 2026.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**